49 CCPA

**Application of Anthony C. DeNAPOLI, Jr., and Donald F. Balmer.**

**Patent Appeal No. 6813.**

United States Court of Customs and Patent Appeals.

May 18, 1962.

---

* United States Senior District Judge for the Eastern District of Pennsylvania, designated to participate in place of Judge

Richard P. Schulze, Clarence M. Fisher, Washington, D. C., J. Philip Anderegg, and Pennie, Edmonds, Morton, Barrows & Taylor, New York City, for appellants.

Clarence W. Moore, Washington, D. C. (Raymond E. Martin, Washington, D. C., of counsel), for the Commissioner of Patents.

Before WORLEY, Chief Judge, RICH and SMITH, Judges, and Judge WILLIAM H. KIRKPATRICK.*

WORLEY, Chief Judge.

This appeal is from the decision of the Board of Appeals of the United States Patent Office affirming the rejection of claim 37 of appellants' application Serial No. 158,104, filed April 26, 1950, for "Indicating and Place-Finding Apparatus for Phonographic Machines." Other claims in the application have been allowed.

The appealed claim reads:

"37. In a phonographic transcribing machine having a cabinet, a support for rotatably holding a record member, an inclined mirror mounted above said support for reflecting an image of said record rearwardly and upwardly, an adjustable mirror in said cabinet reflecting said image forwardly out of said cabinet into a position to be visible

O'CONNELL, pursuant to provisions of Section 294(d), Title 28, United States Code.

to the transcribing typist, said adjustable mirror being retractable downwardly into inoperative position within said cabinet."

The references relied on by the board are:

Trout     1,961,803   June      5, 1934.
Stephan   2,424,513   July     22, 1947.
Traub     2,466,338   April     5, 1949.
Harkin    1,933,057   October  31, 1933.

Appellants' application discloses a phonographic machine for use in transcribing dictation from a record disc. Optical means are provided to enable the typist operating the machine to observe the record disc and the play back stylus during playback even though they are in the cabinet where they cannot be viewed directly. It is disclosed that indexing marks, signifying the locations of the ends of letters and instructions to the typist, are generally provided on the record disc by the dictator. The marks may be made by pencil or crayon or may be "in the form of relatively wide blank index spaces which have been provided between turns of the spiral groove at the desired locations on the record member."

The optical system comprises two mirrors, the first mounted within the machine cabinet in a position to reflect rearwardly and upwardly an image of the area of the record disc traversed by the stylus. The second is mounted on the inner surface of a retractable top section of the cabinet so that it can be raised to an operative position above the cabinet to intercept the image from the first mirror and display it for observation from the front of the machine. In its raised position the second mirror is adjustable about a substantially horizontal axis to permit adapting the viewing angle to the height of the typist.

The Trout patent relates to a cabinet housing sound and motion picture producing equipment. An opening is provided in the front of the cabinet through which the picture is projected from a reel of film onto a mirror outside the cabinet. A screen is secured to the inside of a lid hinged at its rear. With the lid up, the screen is disposed in a substantially vertical position at which it displays the picture reflected on it by the mirror.

The Stephan patent relates to a television receiver of the projection type. The picture tube is disposed in a cabinet with its axis disposed downwardly and rearwardly. A viewing screen is secured to the inside of a hinged lid so as to assume a substantially vertical position when the lid is open. An optical system, including a spherical mirror, a centrally apertured correction plate, and a plane mirror, all disposed within the cabinet, provides a magnified image of the tube picture on the screen.

The Traub patent is referred to by Stephan as disclosing a television system of the type with which his mounting arrangement is used. Traub describes a preferred screen for the system as a specularly reflective concave member having in its reflective surface a large number of minute random parallel grooves which are said to effect "a horizontal diffusion of the incident light."

The Harkin patent discloses an optical system, comprising a plurality of mirrors, for shifting the direction of projection of a motion picture.

The decision under review here is the board's second decision involving the appealed claim. Previously it reversed a rejection by the examiner on other references and made a new rejection of the claim as unpatentable over Trout or Stephan. After further prosecution before the examiner the application came before the board on a rejection which appears to be substantially the same grounds embodied in its previous rejection on Trout or Stephan.

In affirming the final rejection, the board held the word "record" to be recited so broadly as to include "magnetic tapes and optical records as well as a record made on the fluorescent end wall of a cathode ray tube." It regarded the problem faced by appellants as the same one confronting Trout and Stephan, viz., "the arrangement of the optical sur-

faces for reproducing an image off the optical axis of an object whose image is to be reproduced."

The board further stated:

"It is our view that one skilled in the art would be cognizant of the various combinations of optical surfaces which may be used to obtain images off the optical axis of an object, as for example combinations of mirrors or prisms as exemplified by Harkin (1,933,057) of record of the conventional binocular field glass or periscope, of which we take judicial notice; or mirrors and screens, which appellants assert are shown by Trout and Stephan; and would select and use such optical surfaces as would meet the needs of a particular situation."

The board also agreed with the examiner "that it would make no patentable difference whether the screen viewed by an observer in either reference [Trout or Stephan] was a diffusing screen or a mirror." It took the position that statements regarding the screens in Traub and Trout "would at least suggest" to those skilled in the art that they "experiment with various types of screens, including mirrors and adopt that which meets the needs of the experimenter."

It was also the board's view that the adjustability of appellants' retractable mirror fails to bring about a new result and thus lacks patentable significance.

Appellants point out that their construction makes it possible for a typist transcribing dictation from a marked record to locate the stylus accurately on the record without using an index strip. They refer to the elimination of such strips, along with the resultant nuisances to both dictators and transcribers, as an unobvious result arising from their combining a dictation transcribing machine and a double mirror viewing system. It is their position that the board disregarded that unobvious result and treated the claim as defining merely a combina-

tion of optical surfaces for shifting the image of an object to a different axis.

The board failed to mention the reference in the preamble of the claim to "a phonographic translating machine," leaving the implication that it agreed with the examiner that the preamble "is merely a statement of the suggested use and therefore lacking in patentable significance." However, the body of the claim refers to the adjustable mirror as reflecting the image "into a position to be visible to the transcribing typist." It seems to us that, taken together, those two recitations impart a limitation to the claim which cannot be ignored in determining patentabilty. Moreover, we do not find that limitation to be satisfied by the prior art on which the rejection of the appealed claim is based. Only Trout, Stephan, Traub and Harkin are relied on by the board. None of those patents discloses the solution of the problem solved by appellants or even suggests that an arrangement of mirrors be employed to facilitate observation of a phonograph record.

The board's comment that statements in the references would suggest to persons skilled in the art that they experiment "with various types of screens, including mirrors and adopt that which meets the need of the experimenter" indicates that it regards it obvious to substitute mirrors for the screens on which Trout and Stephan display their pictures. To agree with that conclusion would require an assumption that mirrors and screens are virtual equivalents. The record here does not show that a mirror is the equivalent of a screen in the art of projecting moving pictures or television pictures. Thus, we question whether a person of ordinary skill in that art would be expected to substitute mirrors for the screens in the reference devices.

In our opinion the references relied on do not disclose the subject matter of the appealed claim or make what appellants. have done obvious to one of ordinary skill in the art. We are thus obliged to

reverse the decision of the Board of Appeals.

Reversed.

MARTIN, Judge, did not sit or participate because of illness.